We appease the court on Daniel Bartley representing one-night tours to Arizona and to David Hoggett. He quid the incase against University of Phoenix, alleging violations of the incentive compensation ban for the payment of recruiters' incentive to student recruitment from December 12, 2009 to the present. I know the record, there's a lot of issues in here. I'd rather if the court refers back into these questions. The first question is why would a jurisdiction have this case? Why do you have this appeal? Does this have a licensee? It's okay. Also, before I get started, may I reserve two minutes for a thought on things? The jurisdiction issue is resolved by the Rogers case. The test is whether the issues that are the facts that are asserted by the defense are facts that also go to the merits. And the test for that is, well, how does that explain this case? And how does the state court put these issues? Excuse me, when did you file the notice of appeal in this case? I'm sorry, I didn't hear you. When did you file the notice of appeal in this case? The notice of appeal, Rogers, it was filed within a time limit after the rule that you're most supposed to file. I haven't seen it in your form yet. Can you exactly when that was? The rule 59 last year was actually a stay motion. Was actually what? A stay motion. It didn't have anything about merits in it. It said that it included the word amend and it asked for amendment. So it was in the alternative of stay or amend. The counsel's judge called, if I can interject, as I read it, it said it was a motion to stay and amend. But it had no language in it about particular amendments that weren't made. It seemed to be saying stay and amend after the Corinthian College's case is decided. We'll come back and evaluate it and talk. But where in the motion does it specify any amendment? Well, Your Honor, one would infer, and I don't know where the camera is for you, so I don't know. My apologies, I know I can't talk right now. The amendment would be to conform with the request of the Department of Justice that the case not be decided until the Corinthian case. And I know that that overlaps with stay. And I know that we're getting into spanics, and I agree, Your Honor, that it's not an amendment in the form of something that might normally be an amendment. But that's the word that we used, and that word should, consistent with the policy of liberal obstruction for boot camp cases, get us through, get the relators through on this. Okay, thank you. Are there other questions to support? Are you going to make an argument? Are you planning to make an argument? Oh, I can make an argument. I didn't know whether you would want to ask questions or not. The court had asked counsel to address the Crather case. That was a case involving the relator who was a lawyer who worked for the Organized Crime Task Force. That case is distinguishable from this case because the evidence in that case clearly did not show the sufficient evidence for computing the damages or for showing the lie of that case involved. He claimed that because there was a commitment to permit the- Some of the members of this court were on that panel. Maybe we know what the case is about. Okay. But essentially, this case is distinguishable. I don't want to bore you with that. But the court obviously was right in that case. It is one where the individual, number one, was doing his job, which means it wasn't voluntary dismissal. And like I say, there was really not evidence in the record. There was a lie. We always look for a lie in a false claim to that case. Here they said that the telecom companies were entitled to recover their reasonable costs. It didn't say they couldn't recover beyond reasonable costs. So it was a big leap there, and that's not what we have in this case. That's the reason that it's distinguishable. Primarily those two reasons. We don't have voluntariness. The question about the independent knowledge question, or why exactly? Why exactly are you talking about it? I mean, I think he thought that rather it was relevant to the retroactivity issue primarily. Relative to the retroactivity issue. Or relating to the jurisdiction question, which statute applies whether it's jurisdiction or not. You're talking about the retroactivity relative to the amendment in 2010 that took effect. We certainly feel that here the plaintiffs and relators in our case should be entitled to the amendments once they became effective in March. They only pled three and a half months of period that were under the old law relative to original source. And more than 60 after they pled. So if the court were to decide to enforce it as the first three and a half months, they should apply the 2010 law. As to those incidents from the March 2010 date when the new law came into effect on the original source of public disclosure. I hope that answers your question. So I don't know. My counsel has told me I can ask the question again. I think if the court were to conclude that you have jurisdiction on this appeal, despite the timing issue, that I'd be inclined to, as just one judge, to say send it back to the district court and let it assess it further. But the problem I'm having in my mind is whether we're allowed to do that when the appeals filed more than 30 days after the judgment, which seems to turn on whether the motion you filed, stay and amend, is a motion to amend within the meaning of the governing fram. So my question is this. The position that it was not a valid motion to amend, that it was just a stay motion, was raised by the government in the red brief. And I don't think you addressed the issue at all in your reply brief. So my question is, if we were to issue a post-argument order asking the parties to address the jurisdiction issue, would you have more to say than what you've said here today? Your Honor, I did brief it in response to the motion. So there's a brief in there. I saw that brief. I saw the brief to the Commissioner opposing the motion, but we didn't get any briefing in this case. I understand, Your Honor. I don't think that there's any new law on that subject that I would be briefing. As I say, I would urge the panel to look at the totality of the circumstances here. It's an odd bunch of circumstances where we have the government requesting a sanction, a pity intervention, short or full intervention by the Justice. I'm sorry. Pardon? The government requesting what action? The attempting to get these to stay for the amendment. That was urged by the Department in Washington. Okay. Well, you can guess. Go ahead. You can. But how can you call a Rule 59 motion? That's the question. You can ask for a stay. You can file an appeal. You can ask for a stay. You can ask for their stay quickly because they would need to file a motion. I noticed that the elegy don't stand. But why does that turn it into a Rule 59 motion? Well, Your Honor, that's the way we characterized it. We felt that it was being construed as a request to amend. Again, I would just ask for a liberal interpretation of this, in large part because this is a case brought on behalf of the public and has unusual circumstances where we were trying to tell the line relative to what the Department of Justice wanted us to do. Are there other questions about that issue? No? Thank you. Okay. Defense counsel then filed a copy of the Corinthian case, which I should probably address here. The Corinthian case was an unpublished decision. The governing case on this area, the law in the Ninth Circuit, is the handout case. It's one of the primary cases on certification, false certification under the False Claims Act in the United States, and it's certainly the main case here in the Ninth Circuit, which was a published case. The Corinthian relay tort, according to that decision, had relied on reports regarding lead to conversion ratios on the part of recruiters. And there was very little else, at least in the opinion, that was cited. But in this case, in the third amendment, and you'll find this, of course, in the record here from paragraphs 30 through 62, there are a whopping 33 paragraphs. Very, very extensive details regarding the relay tort's fault in goods, knowledge in regards to violations of the ban. They continued to pay their recruiters like used car salesmen. And it wasn't rocket science. It was common knowledge. And they alleged in their complaint that this was run from the top down very strictly by the IROs in Phoenix. This is not something from the bottom up. They received reports from their management about how this was run on a daily basis in the ordinary course of business. Most reports would not be hearsay. Those were in the ordinary course of business about what was going on. And they had extensive knowledge that's played here that was not done in the Corinthian case. Also in the Corinthian case, there was not. You're not actually arguing now about the, it seems to me in some ways the stronger argument is that there really wasn't public disclosure. It appears that the public disclosures were about, you know, generally there was a lot of shenanigans going on here, and generally there was some reliance on incentives to pay and so on. But as far as I could tell, there was basically one statement in the public record, and maybe that's enough, that said that there was, during a relevant time period, this was solely because of, and it was being done in the industry in general, solely because of the Corinthian numbers. There was a public, there was a congressional hearing in which one person said that they couldn't find anything else. There was, there is an examination of the complaint that's required here. There should have been the Rule 12b6 standard applied here. Again, I go back to the point that the facts that were relied on were facts that go to the merits, not just to jurisdiction. And therefore, What merits? What are the merits? Why? The merits are whether there was actually, whether there actually was such, so such a thing. But why, what's the overlap? I don't see the overlap. Well, I've played that extensively in the, I'm sure you've heard it now, I want you to tell me what's the overlap. The overlap pertains, again, to strong evidence that there was a violation of the ban, and I can see it here. I've used up my remaining time. And what does that have to do with the, why is that a jurisdictional question? A jurisdictional question. Well, that is, that's not supposed to be a jurisdictional question, but when it goes to the merits, it's supposed to be the real problem. No, but I want to know why it goes to the merits. Why? The jurisdictional question is whether there was public disclosure and that there was independent knowledge. The merits question is whether there was actually a violation. What is the overlap? There are about 25 to 30 overlaps that I've had in the brief. The claim is pled that way because of the regulations. Compensating enrollment counselors based partially on enrollments was appropriated legally. So the claim is that the University of Phoenix sold it. But is it anymore, I get it. Or has it been changed? Yes, it's been changed since July 2011. But here, the issue was, the allegation was that the enrollment counselor submits So, what was the public disclosure on that matter? I found, as I say, I found one misstatement. Even assuming they were looking at the migrant have just a complaint. I'm sorry, could you repeat that? Even assuming they were looking at the submissions and not just the complaint. Yes, Your Honor. Well, there were a number of disclosures. We listed on 11 through 20 of our. Right, and I read all of that. And from what I could tell, there was a lot of stuff about, you know, they're factoring this in or in general. They're, you know, the industry is taking people in who aren't qualified or are going to make it and a whole bunch of things. But what is specific about this? What public disclosures were specific about the sole client standard? There were a number of disclosures based on the interest issue of incentive compensation. Yes. And that's not what I'm asking you, incentive compensation. But the only violation is if it was a sole client environment. So, what's the fact that a lot of people who claim to have public disclosure? What's the violation? There's a number of disclosures and discussions about incentive compensation. I know, but that's not the violation. You're going to get yourself into a box and embarrass. Do you think that's a disclosure? Because your position on the merits is that it's not a disclosure. That's not the violation. So, what is the violation? I.e., sole reliance. What public disclosures? First of all, the case should be evaluated in the context of the handout settlement itself. I'm sorry. The handout settlement itself, which was in December of 2009, which addressed the issue of incentive compensation. The government was a party to that settlement, so the government was certainly aware. The frontline story, in May 2010, an ER 303 discussed incentive for enrollments. And, Your Honor, the specific client in there, based on how many people were all enrolled, pretty much found that many of them were located in incentive compensation. I know, but that's not the violation. Well. See, all I could find was the question is that there was, I don't remember the man's name, but somebody testified in the Congressional hearing and said something about being a show-off. That's right. In the Congressional hearing, August of 2010, there was testimony from a gentleman from the National Association for College Admission Counseling. The recruiters are compensated almost exclusively, if not exclusively, based on whether a student... It goes back one statement. Yes, sir. It certainly is sufficiently cited in a brief case to hold one public disclosure sufficiently true to the law. But beyond that, Your Honor, exclusion in other cases say the issue is whether the allegations are substantially similar to the allegations in the complaint. The issue of fraud and improper practices at for-profit universities was discussed over and over again in the media and other sources, and they certainly... One more time, I did have something I wanted to say, because it's a fine... Because the violation is so specific, I don't understand how a lot of complaints about untoward practices as opposed to illegal practices is a public disclosure. Well, the worst disclosures about compensation violations is the hearing that we talked about. There was also a... In February 2010, the DAO published a letter talking about incentive compensation violations. That's the subject of the investigation in ER 156. When was that? February 23, 2010, at ER 156. There was the story in Bloomberg News, ER 134, dated January 19, 2010, in which New York is... The issue is whether New York is going to allow the University of Phoenix to establish schools within the state of New York. And the story says that one reason that New York will not do that or is considering not to do that is because of violations including how the University of Phoenix quote-unquote compensates recruiters as in ER 134. There was also a Senate hearing June 24, 2010. This is at ER 226. Same Senate hearing, same Senate committee that eventually holds the hearing in August. In that hearing, June 24, 2010, ER 226, the Inspector General of the Department of Education says that the Department of Education is investigating complaints regarding violations of the incentive compensation ban by for-profits. It insists that they see compensation plans in which enrollment counselors are compensated based on enrollment in violation of the ban. So not only were there news stories about the incentive compensation violation and fraud in for-profits in general, but there also was testimony that the Department of Education, the federal government, was investigating that very issue prior to the point this complaint was filed. Again, June 24, 2010, the Inspector General testifies that the Department of Education is conducting such an investigation of incentive compensation violations. GAO report from August 4, 2010, ER 255. There, they talk about an undercover investigation of 15 for-profit colleges. There was a discussion of a, quote-unquote, recruitment process specifically designed to drive up enrollment numbers. There was an interest issue of rewards for recruiting students. I understand that most of this was going towards the argument that the current regulation wasn't sufficient, and that's why it ultimately changed. So most of this was not a disclosure of violations of the current violations, but an argument that because there were still using incentive compensation in part of the statute, there were the regulations, the regulations actually changed. So that's what I'm having trouble with. Right. Well, that certainly was one plan that was addressed in these hearings, was a change that should be made to the regulations. But beyond that, for example, the June 24th GAO report, there also was specific discussion about incentive compensation violations, that is, violations of the incentive compensation ban. So both of those things were discussed in candor. And the overall point, Your Honor, that I think is important here is that under the ELC and in other cases, it's clear that what the issue, the issue that needs to be addressed was there sufficient information in the public record that would have caused the government to have a basis for investigation. Here there certainly was. We know that because there were parties that had no settlement in December 2009. We know that because there were news reports. We know that because it's clear from the public record that the government was actually investigating this issue in 2009 and 2010. The June 2010 GAO report says that specifically there's testimony in the hearings for the summer of 2010 where that's said specifically as well. And I'd remind Your Honor, too, that under the Hagler case from the 9th Circuit and other cases, the court says the allegations to the public record don't have to be identical. They don't have to name the particular defendant. Just enough to give the government a reason to investigate. And in the words of Hagley in footnote 17, this court denies certainty in regards to public disclosure or is a quote-unquote quick trigger to get to the original source issue. Unless you'd like me to address anything further, Your Honor, I'm going to move on. What about Judge Bull's position on Fryder? Your Honor, with respect to Fryder, three points. And our view is that there's no reason to remand the case with respect to Judge Bull's question. And the reason is that there's three things that are important about Fryder as it applies to this case, specifically the issue of the amendment. First of all, the amendment, as Mr. Barley said, was something that took place during the course of 2010, so it only applies to part of these claims. The Fryder argument was waived. It was not raised in this court. And it's not a new issue in this case. We address this issue specifically in the district court. If the court goes back and looks at the brief... What issue are you talking about? Whether it's a fall v. 6 or fall v. 1, essentially? Yes, exactly. We address that issue in the district court. It is by their post amendment. The public disclosure bar is a affirmative defense. We're still a jurisdictional issue. We address that issue. We argue it in the district court. The district court said it was still a jurisdictional bar. We also argue... And it matters in terms of burden and also in terms of whether it would be decided on the complete or on a record. Is that basically the issue? I agree with the first statement, not the second. It does matter in terms of burden. In other words, if it's a pure jurisdictional question, the relators would have the burden. If not, we would have the burden. This motion, though, it's important to remember, is not a motion based on the pleadings. This was a motion that was decided after the close of years of fact discovery. Four complaints have been filed by the time this motion was decided. The relators have been... This was not jurisdictional, but a summary judgment motion? Yes. Your Honor... Are you saying it was published in the same thing? It doesn't matter. Here's why it doesn't matter. Even if the court decided that a summary judgment standard should have been applied, again, the argument was not made by the relators in this court, but if the court decided that, the court, the proper approach, respectfully, is to take the approach of the court to open the trip to Colossal Caves from the 9th Circuit in 1987. That is to say, well, look, this is an evidentiary motion based on the record. If the de novo standard of summary judgment was applied, what should have been the result? And here, it's clear that even under a summary judgment standard, the case is probably dismissed. The reason is, I mean, at least we deal, of course, with the exercise of data provided by the court. Here, it's not. It's not. You're supposed to see the court's decision. It doesn't actually matter. But, from your point of view, you're saying, we should say, and I see your emotion, that, well, why don't you consider it as if it were a summary judgment motion since we have data from the refuting and, in effect, a summary judgment of your side? Well, yes, that was the first point. I don't think you see it as a recent issue because they waived it by not approving it. But if you concluded that the amendment was one in which you made this not a jurisdictional bar any longer, that's exactly right, Your Honor. In this approach, the courts are going to try to cost, and there are other cases they might actually pass. Royalty's case, for example, where the court does the same thing. Here's why. This was not a case where the district court decided this issue to be brought to the district court. If we decide making a summary judgment for genuine issues that are in effect within 30 minutes of the district court is now affirmative in effect and I have the district court may have to by gather give a summary judgment decision and then maybe it will just be denied if it's a summary judgment again. You may have to proceed to an adjournment point if there's a discursive thing that's going on in there. Well, that's right, Your Honor. But my point is that under a summary judgment standard we win anyway. The reason for that is this is not a case where the district court decided it's decided and the motion based on it is allocation of the burden of proof. What the district court said looking at the record evidence in page 17 of its opinion is that it is impossible most of the district court's words based on the record here to conclude that the relators were original sources. Impossible. And the reason for that is because on the one hand after years of discovery the record on appeal bears this out. You have absolutely no evidence that would suggest that these two men were original sources. Look, for example, the plaintiff's relator's brief. I think what you're saying is the reason it's decided would be to give summary judgment to defendants that's why I'm saying that you need to give summary judgment to defendants. You may be in bounds, but that could be a formality. Well, right, Your Honor. If you look at the record and you say summary judgment if you reach that issue, which we don't think you should if you reach the issue and decide that under a summary judgment standard that there was a public disclosure for both amendments, we'll deal with that when we go back to the district court. What I'm saying is on this record there really is no basis for that decision. There is no evidence cited by the relators looking at page 42 and 54 of their briefs where they lay out the evidence. On the other side the sites, the deposition transcripts which are in the record are in our briefs. On the other side we have proof that admissions from the relators themselves that one way they were compensated was not based solely on enrollments. They were compensated based on a number of other factors, retention, talks with students, customer service, and so on. Mr. Hottis here has been justified in the deposition 131-3 through 134-10 that he himself was paid less and got fewer advancement opportunities than others who had fewer enrollments than he did. They also testified we lay out on the record that they knew nothing about other people's pay, their reviews, or so on. They testified we lay out on the record that they had nothing to do with program participation agreements, nothing to do with the management association groups that are certainly the basis. That third piece in and of itself in recruiting colleges in L-10 is enough to decide that they were not original sources. You can obviously see my time is up. May I make one important point and I'm not supposed to sit down but I do want to emphasize that I haven't addressed it but there is a threshold issue here which is the court respectfully does not have jurisdiction under the Bordello case given the most of the statements filed and the claims of the most of the people. Thank you very much. Your Honor, the district court may not have jurisdiction where there is jurisdiction was not a question that could be raised the first time on the relator's position. You also have to out statements that were both jurisdictional and go to the merits if you go to pages 22 through 24 in the third amended complaint. We listed approximately 15 segments that are both go to the merits and up to jurisdiction. The relators in this case are not the type of parasitic interlopers that the disclosure bar was designed to address. If you go back to why this was done this is to keep people from just reading something in the newspaper and going and saying hey I'm going to go file a lawsuit over this and make myself a million dollars. These people put their reputations and their income and their jobs on the line. They lost their jobs over this and they did report this to the Department of Education totally voluntarily and under the amendments that came in in March of 2002 their claims should be owed out at least from the date of the amendments forward even though there were other alleged disclosures. Those alleged disclosures had nothing to do with incentive violations, incentive compensation violations post handout. In fact it was the handout case that brought all the publicity and it was nationwide. I was in the middle of it. It brought all this publicity and it spurred the hearings. So it is a stake for the court to be misled that those hearings look like were caused by new violations that were ongoing since the December 12th settlement in the handout case. That's what precipitated those hearings. Thank you. Thank you both for your arguments. Thank you. Thank you. Thank you.
judges: Gould, Berzon, Garbis